**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE GENWORTH FINANCIAL, INC.
SECURITIES LITIGATION

Case No. 14-CV-02392 (AKH)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO LEAD PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

**DENTONS US LLP**
Reid L. Ashinoff
Sandra D. Hauser
Brendan E. Zahner

1221 Avenue of the Americas
New York, New York 10020
Tel:  (212) 768-6700
reid.ashinoff@dentons.com
sandra.hauser@dentons.com
brendan.zahner@dentons.com

David I. Ackerman (*admitted pro hac vice*)
1301 K. Street NW, Suite 600
Washington, DC 20005
(202) 408-6400
david.ackerman@dentons.com

*Attorneys for Defendants Genworth Financial, Inc.,*
*Michael D. Fraizer and Martin P. Klein*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

PLAINTIFFS' BURDEN ............................................................................................................... 3

ARGUMENT ................................................................................................................................. 5

I.     PLAINTIFFS FAIL TO MEET THEIR BURDEN TO ESTABLISH AN
ACTIONABLE MISREPRESENTATION OR OMISSION TO TRIGGER A
CLASS PERIOD ................................................................................................................ 5

   A.   Genworth's Announcement of a Planned IPO on November 3, 2011 Cannot
Itself Trigger the Beginning of a Class Period ................................................................. 7

   B.   Plaintiffs Have Not Established Any Actionable Misrepresentation on
November 3, 2011 that Can Trigger the Beginning of a Class Period ............................. 8

      1.   The Allegations at the Core of Plaintiffs' SAC Have Been Recanted and
Disavowed and Do Not Present the "Preponderance of Evidence" Necessary
to Certify a Class .................................................................................................. 9

      2.   Plaintiffs Cannot Trigger a Class Period by Reference to SAC Allegations
Already Rejected by This Court as Insufficient to Even State a Claim. ................. 13

      3.   Plaintiffs' "Fraud-by-Hindsight" Allegations Do Not Identify an Actionable
Statement to Launch a Class Period, Let Alone Provide Evidentiary Support
to Meet Plaintiffs' Rule 23 Burden. ....................................................................... 14

      4.   Plaintiffs' Proposed Expert Report on "Price Impact" and an "Efficient
Market" Does Not Assist Them At All in Satisfying Their Burden To
Commence a Class Period. ..................................................................................... 16

II.    PLAINTIFFS' TRADING PATTERNS SUBJECT THEM TO UNIQUE
DEFENSES ........................................................................................................................ 17

III.   PLAINTIFFS' PROPOSED CLASS DEFINITION IS IMPROPERLY
OVERBROAD AND TECHNICALLY DEFICIENT BECAUSE PLAINTIFFS
INAPPROPRIATELY INCLUDE ALL OPTIONS PURCHASERS IN THE
CLASS DEFINITION, AND START THE PROPOSED CLASS ONE DAY
EARLY ............................................................................................................................... 20

IV.   PLAINTIFFS' DRAFT PROPOSED ORDER FAILS TO MEET THE
      COURT'S OBLIGATION TO CONDUCT A RIGOROUS ANALYSIS OF
      WHETHER PLAINTIFFS HAVE MET THEIR RULE 23 BURDEN BY
      PREPONDERANCE OF EVIDENCE, AND TO RENDER FACTUAL
      FINDINGS ON ALL ASPECTS OF THE CLASS, INCLUDING ITS START
      DATE ..................................................................................................................... 22

CONCLUSION ........................................................................................................................ 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009)........................................................................21

*Acito v. IMCERA Grp., Inc.*,
    47 F.3d 47 (2d Cir. 1995)...........................................................................................15

*Bank of America Corp. Sec., Derivative, and ERISA Litig.*, No. 09 MD 2058,
    2011 WL 3211472 (S.D.N.Y. Jul. 29, 2011) ............................................................21

*Basic v. Levinson*,
    485 U.S. 224 (1988)...............................................................................................6, 18

*Berwecky v. Bear, Stearns & Co.*,
    197 F.R.D. 65 (S.D.N.Y. 2000) ................................................................................18

*Comcast Corp. v. Behrend*,
    133 S. Ct. 1426 (2013)................................................................................................4

*Denny v. Barber*,
    576 F.2d 465 (2d Cir. 1978).......................................................................................15

*Fannie Mae 2008 Sec. Litig.*,
    525 F. App'x 16 (2d Cir. 2013) .................................................................................15

*Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009).........................................................................................6

*Gary Plastic Packaging Corp. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*,
    903 F.2d 176 (2d Cir. 1990).......................................................................................17

*George v. China Auto. Sys., Inc.*,
    No. 11 CIV. 7533 KBF, 2013 WL 3357170 (S.D.N.Y. July 3, 2013).............17, 18, 20

*Green v. Wolf*,
    406 F.2d 291 (2d Cir. 1968).......................................................................................4

*Halliburton v. Erica John Fund, Inc.*,
    134 S. Ct. 2398 (2014) ...................................................................................... *passim*

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004).................................................................................21, 23

*Initial Pub. Offerings Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006)...........................................................................*passim*

*Johnson v. Nextel Communications Inc.*,
  780 F.3d 128 (2d Cir. 2015).....................................................................................4

*Kline v. Wolf*,
  702 F.2d 400 (2d Cir. 1983)...................................................................................17

*Landry v. Price Waterhouse Chartered Accountants*,
  123 F.R.D. 474 (S.D.N.Y. 1989) ...........................................................................17

*Longtop Fin. Techs. Ltd. Sec. Litig.*,
  910 F. Supp. 2d 561, 579 (S.D.N.Y. 2012)...........................................................15

*Lumen v. Anderson*,
  280 F.R.D. 451 (W.D. Mo. 2012) ......................................................................6, 13

*Magnum Hunter Res. Corp. Sec. Litig.*,
  26 F. Supp. 3d 278 (S.D.N.Y. 2014) *aff'd*, 616 F. App'x 442 (2d Cir. 2015)...................15, 16

*Menkes v. Stolt-Nielsen S.A.*,
  270 F.R.D. 80 (D. Conn. 2010)................................................................................6

*Moody's Corp. Sec. Litig.*,
  274 F.R.D. 480 (S.D.N.Y. 2011) ..............................................................................5

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
  693 F.3d 145 (2d Cir. 2012)....................................................................................22

*New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
  No. 08 Civ 5653 (PAC), 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010) ................................21

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  259 F.3d 154 (3d Cir. 2001)....................................................................................23

*PetroChina Co. Ltd. Sec. Litig.*,
  No. 13-CV-6180 ER, 2015 WL 4619797 (S.D.N.Y. Aug. 3, 2015)......................................15

*Regents of University of California v. Credit Suisse First Boston (USA), Inc.*,
  482 F.3d 372 (5th Cir. 2007) *cert. denied*, 552 U.S. 1170 (2008)..........................................23

*Robidoux v. Celani*,
  987 F.2d 931 (2d Cir. 1993).......................................................................................6

*Rocco v. Nam Tai Electronics, Inc.*,
  245 F.R.D. 131 (S.D.N.Y. 2007) .............................................................................18

*St. Stephen's School v. PricewaterhouseCoopers Accountants N.V.*,
    570 F. App'x 37 (2d Cir. 2014) ....................................................................22

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
    546 F.3d 196 (2d Cir. 2008)....................................................................4, 5

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)......................................................................................7

*Veeco Instruments, Inc. Sec. Litig.*,
    235 F.R.D. 220 (S.D.N.Y. 2006) ............................................................6, 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 131 S. Ct. 2541, 2551 (2011)................................................4

**Statutes and Rules**

SEC Rule 10b-5 ...............................................................................1, 6, 13

**Other Authorities**

Fed. R. Civ. P. 23 .................................................................... *passim*

Fed. R. Civ. P. 23(a) ...............................................................................2

Fed. R. Civ. P. 23(b)(3)...........................................................................20

Fed. R. Civ. P. 23(c) ................................................................................7

Fed. R. Civ. P. 23(c)(1)(B) ......................................................................6

## PRELIMINARY STATEMENT

Plaintiffs' motion to certify a class suffers from a core and fatal flaw: Although it is undeniably Plaintiffs' burden to prove by a *preponderance of the evidence* that their proposed class satisfies each element of Rule 23, they offer this Court nothing beyond the bare allegations of the Second Amended Complaint ("SAC") on essential aspects of their proposed class. This is a colossal failure of proof. Plaintiffs cannot withstand the "rigorous analysis" required of this Court on class and certification must be denied.

***First, and most fundamentally,*** Plaintiffs fail to support the proposed start date of their class period -- the most basic building block of a class under Rule 23. A class period in a Rule 10b-5 case cannot begin until the first trading day after an *actionable false statement or omission*. Yet Plaintiffs have made no evidentiary showing of *any* false statement made by Defendants with *scienter* on November 3, 2011, or on any other date, as is required to initiate a class period. Plaintiffs instead rest on the "evidence" provided by two "confidential witnesses" ("CWs") whose purported allegations about "hidden" losses and deteriorating performance lie at the heart of the SAC and are repeated at least three times in support of Plaintiffs' class motion. But both CWs have now recanted or disavowed the key statements the SAC attributes to them -- including the only statements cited to support a strong inference of *scienter* -- and consequently are *worthless* to Plaintiffs as "evidence" to justify the start of a class period. Having pled this recanted and disavowed evidence to attempt to jump the hurdle of the PSLRA, Plaintiffs cannot now bootstrap the same flawed allegations to carry their high *evidentiary* burden on a motion to certify a class.[1]

---

[1]   Defendants set forth the CWs' alarming recantations and disavowals in their recent Motion for Reconsideration, Dkt 87, 88, 89, 102. Defendants submit these materials as Exhibits B-E to the Declaration of Sandra D. Hauser dated February 22, 2016 (excluding those materials filed under

The remainder of Plaintiffs' SAC allegations that they cite as support -- while incredibly portrayed as "factual background" for their motion -- are merely unsworn assertions with zero evidentiary value, or reference *disclosures by Genworth* that undermine Plaintiffs' claims.  This Court already rejected the very same allegations as insufficient to state any cause of action.[2] Plaintiffs' "fraud by hindsight" claims do not come anywhere close to proving an actionable statement to launch a class period on November 3, 2011, on February 3, 2012, or at any other time.  Nor do Plaintiffs' efforts to show a "price impact" from an IPO announcement or an earnings report help them: Defendants do not contest market efficiency, and a "price impact" means nothing for purposes of certifying a 10b-5 class when Plaintiffs fail at the threshold to show that any knowingly false statement by Defendants *artificially* inflated the market price.

Plaintiffs' class motion fails for a ***second*** reason:  Plaintiffs made numerous purchases of Genworth stock after the alleged "corrective disclosure" which they claim revealed fraud, and both *after and contemporaneous with* filing their Complaint.  These unique trading patterns subject Plaintiffs to distinct defenses and undermine their ability to invoke a presumption of reliance, failing Rule 23(a)(3) (typicality), 23(a)(4) (adequacy) and 23(b)(3) (predominance).

***Finally***, as a technical matter, Plaintiffs have proffered an overbroad and technically deficient class definition which inappropriately includes options purchasers for whom there is no

---

seal), and incorporate them in full herein.  Exhibits to the Hauser Dec. are referenced as "Ex. __ ", followed by the exhibit number.

[2]  This Court *sua sponte* dismissed Plaintiffs' Amended Complaint, ruling that "it fails to plead a coherent claim for relief satisfying the demands of the PSLRA[,] and Rules 8(a)(2) and 9(b) of the" Fed. R. Civ. P.  Ex. F, Dkt. 41 at 3.  The Court further held that any second amended complaint "must 'specify each statement alleged to have been misleading,' and 'the reason or reasons why,' but plainly and clearly…. [and] must allege… with 'particularity,' the facts giving rise to a strong inference that the defendant acted with *scienter*.  15 U.S.C. §78u-4(b)(2)." *Id.* Plaintiffs came back with the SAC, with the only material difference being that for the first time they attributed the now-recanted statements to the CWs.  *See generally* Dkt. 87, 88, 89, 102 (Exs. B-E).

standing to sue, and starts a class the day before the stock price could possibly have been affected by any alleged misrepresentation, precluding certification of the class they seek. They also present a Proposed Order on class certification that this Court cannot accept because it includes no factual findings on the Rule 23 requirements -- including a finding regarding an appropriate trigger for the class period -- and thus fails to comply with Second Circuit law.

Plaintiffs made a deliberate decision to move to certify a class resting on the SAC and without discovery. In fact, Plaintiffs expressly represented that they required *no* discovery before filing their motion. Ex. H, 9/30/15 Tr. 20:24-25 ("Do we need discovery for class certification? No.") and 21:23-24 ("We are prepared to make a motion for class certification within 60 days of today."). The Court further admonished Plaintiffs not to leave issues of proof for reply: "They put in a bare bones motion at their peril . . . there will be no abuse." *Id*. at 10:3-23. Plaintiffs cannot turn back on their decisions now that they have misperceived the law and failed in their burden to present proof to this Court. Class must be denied.

## PLAINTIFFS' BURDEN

It is Plaintiffs' burden on a motion to certify a class to "actually *prove* -- not simply plead -- that their proposed class satisfies *each requirement* of Rule 23," *Halliburton v. Erica John Fund, Inc*., 134 S. Ct. 2398, 2412 (2014) ("*Halliburton II*") (second emphasis added), and they must do so not just by the unsworn allegations of their pleadings, nor by setting forth "some evidence." Rather, Plaintiffs must demonstrate by "a preponderance of the evidence," subject to a "rigorous analysis" by this Court, that their *evidentiary* burden to prove each element of their proposed class has been met. *See id.; In Re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 33, 41-42 (2d Cir. 2006) ("*In re IPO*"); *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008); *Comcast Corp. v. Behrend,* 133 S. Ct. 1426,

1432 (2013) (to come within the exception to the ordinary rule that litigation is conducted by and on behalf of the individual named parties only, "a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23," *quoting Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S. Ct. 2541, 2551 (2011)).

Notwithstanding Plaintiffs' lip service to these clear Supreme Court and Second Circuit directives, Plaintiffs submit a boilerplate motion to this Court with no supporting evidence on issues at the heart of their 10b-5 claims. They invoke outdated law to the effect that the Rule 23 standard is "liberal" and that securities cases are to be routinely certified, and then suggest that certification here is axiomatic and the Court should "err on the side of granting class certification" -- as if the last decade of jurisprudence and "rigorous analysis" was not the law.[3]

It is now well established that the mere allegations in an unverified complaint do not carry a plaintiff's burden, nor is proffering "some evidence" sufficient. Rather, "[T]he district judge must receive enough ***evidence***, by ***affidavits, documents, or testimony***, to be satisfied that each Rule 23 requirement has been met." *In re IPO*, 471 F.3d at 41 (emphasis added). Making that determination requires that the Court undertake a "rigorous analysis" of Plaintiffs' arguments and "assess ***all of the relevant evidence admitted at the class certification stage*** and determine whether each Rule 23 requirement has been met." *Id.* at 42 (emphasis added); *see also Johnson v. Nextel Communications Inc.*, 780 F.3d 128, 138 (2d Cir. 2015) (Because "the Supreme Court has cautioned that any competently crafted class complaint literally raises common questions," "a court must probe behind the pleadings before coming to rest on the

---

[3]  Plaintiffs cite an unreported decision issued last year by Judge Daniels, which in turn relies upon *Green v. Wolf*, 406 F.2d 291 (2d Cir. 1968), a case that does not reflect the current state of the law as it has developed in the more than forty-seven years since 1968. The days of relying on the unsubstantiated allegations of a Complaint to gain class certification are long gone.

certification question, satisfying itself that Rule 23 compliance may be demonstrated through evidentiary proof.") (citations and internal quotation marks omitted)).

When the actual evidence does not support each of the requirements for certification -- including establishing the basis for a class period -- it is the Court's obligation to deny class certification, even in securities cases.  *See, e.g.*, *Teamsters Local 445*, 546 F.3d at 202 (plaintiffs did not establish factual ground for a presumption of reliance by "preponderance of the evidence"); *In re IPO*, 471 F.3d at 42; *In re Moody's Corp. Sec. Litig.*, 274 F.R.D. 480 (S.D.N.Y. 2011).

## ARGUMENT

### I.  PLAINTIFFS FAIL TO MEET THEIR BURDEN TO ESTABLISH AN ACTIONABLE MISREPRESENTATION OR OMISSION TO TRIGGER A CLASS PERIOD

Although neither Plaintiff purchased any Genworth stock during any month of the proposed class period prior to February, 2012, Plaintiffs request a November 3, 2011 start date for the class, stating that Defendants announced a planned partial IPO of their Australian mortgage insurance (AU MI) business on that date.  They then bookend the proposed class period with an April 17, 2012 close date, the date that a delay of that IPO and other news was announced.  But Plaintiffs fail to support any knowingly false statement made by Defendants on November 3, 2011 (the date of Genworth's 3Q 2011 disclosures), on February 3, 2012 (the day after Genworth's 4Q 2011 disclosures) or on any other date to initiate a class period.

The proposed class definition is the most fundamental aspect of a class action.   The Second Circuit has made clear that "rigorous analysis" is as much the Court's obligation when scrutinizing the class period or class definition as it is for any other element of Rule 23:

> Under *In re IPO*, lower courts have an 'obligation' to resolve factual disputes relevant to the Rule 23 requirements and to determine whether the requirements are met, **an obligation 'not lessened by overlap between a Rule 23**

> **requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement**.'  To the extent the lower court was required to make factual findings or conclusions of law with respect to any of the Rule 23 requirements, **including the definition of the class**, those determinations are reviewable here.

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 37-38 (2d Cir. 2009) (emphasis added) (quoting *In re IPO*, 471 F.3d at 41, and emphasizing the centrality of "the court's authority to define the class, pursuant to Fed. R. Civ. P. 23(c)(1)(B). . . ."); *cf.* Fed. R. Civ. P. 23(c)(1)(B) ("An order that certifies a class action must define the class . . ."); *In re IPO*, 471 F.3d at 33 n.3 (what the Supreme Court said about Rule 23(a) requirements "applies with equal force to all Rule 23 requirements"); *see generally* 1 McLaughlin on Class Actions § 4:3 (12th ed.).  The Second Circuit has also long made clear that the "court is not bound by the class definition proposed in the complaint." *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993).

A class period in a 10b-5 case cannot begin until the first trading day after an actionable false statement or omission that plausibly triggers class wide reliance.  *See generally Halliburton II*, 134 S.Ct. at 2408 (citing *Basic v. Levinson*, 485 U.S. 224 (1988)); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 241 (S.D.N.Y. 2006) (shortening class period where proposed definition was based upon statements "not actionable under the securities laws."); *Menkes v. Stolt-Nielsen S.A.*, 270 F.R.D. 80, 99 (D. Conn. 2010) (same); *Lumen v. Anderson*, 280 F.R.D. 451, 456 (W.D. Mo. 2012) (after digging into facts and analyzing proposed misrepresentations on motion to certify class, rejected plaintiffs' start date and shortened class period).  To be "actionable" under Rule 10b-5, as this Court recognized in its March 25, 2015 Order, Plaintiffs must show "'with respect to each act or omission' that is false and misleading, and with 'particularity,' the facts giving rise to a strong inference that the defendant acted with *scienter*." Ex. F, Dkt. 41, at 3. The Supreme Court has made clear that even for purposes of pleading such a

claim, explicit facts showing a *clear and cogent* case of *scienter* are required, and Congress "unequivocally raise[d] the bar" such that mere "plausibility" is not enough:

> Congress did not merely require plaintiffs . . . to allege facts from which an inference of scienter rationally *could* be drawn.  **Instead, Congress required plaintiffs to plead with particularity facts that give rise to a "strong" -i.e., a powerful or cogent-inference**.

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007) (bolded emphasis added). With zero probative evidence of such an actionable statement, and no evidence to support the start of a class period as required by Rule 23(c), Plaintiffs fail to establish an artificially inflated stock price at any time and class fails.  *See, e.g.*, *Halliburton II*, 134 S.Ct. at 2408.

A.    **Genworth's Announcement of a Planned IPO on November 3, 2011 Cannot Itself Trigger the Beginning of a Class Period**

After trading had closed on November 3, 2011, Genworth filed an 8-K and issued a press release in which it advised that "Genworth plans to pursue a minority initial public offering (IPO) of its Australian mortgage insurance business in the second quarter of 2012, subject to market conditions and regulatory review and approval."  Ex. P, Exhibit 99.1, at 3.  Plaintiffs propose to start the class period on the date of this announcement.  But there is not even an allegation in the SAC that Defendants did not in good faith intend to proceed with the IPO when announced, and zero evidence that the statement made was false.  To the contrary, Plaintiffs allege in the SAC that Genworth engaged at least four investment banks in connection with the IPO.  SAC, Dkt. 42 at ¶ 74.  Plaintiffs further plead that "a lot of analysis [was] done in Australia for the investment banks that were preparing for the IPO," and that "the investment banks analyzed many of the internal metrics," including "everything that went into calculating the unit's overall income." SAC ¶ 73.

The SAC even states that CW1 confirmed "the IPO as being very important to Genworth and that the intent to having it occur in the first half of 2012 was a topic at each of these

quarterly meetings, where it was frequently discussed."  SAC ¶ 63.  Plaintiffs' own allegations

are thus inconsistent with any assertion that Genworth did not intend to pursue a partial IPO of

its Australian mortgage insurance unit when it made the announcement on November 3, 2011.

Since the announcement is not an actionable statement, Plaintiffs cannot support their class

period based on it.[4]

> **B.    Plaintiffs Have Not Established Any Actionable Misrepresentation on
> November 3, 2011 that Can Trigger the Beginning of a Class Period**

Plaintiffs' Memorandum of Law in Support of their Motion to Certify a Class outlines for

the Court the "Factual Background" for their motion.  Pl. Br. 2-4.  This consists of approximately

a page and a half of text, in which Plaintiffs cite only various paragraphs of the SAC and nothing

else.  But SAC allegations not anchored in fact are not evidence.  And the only salient SAC

allegations that this Court identified as even stating any actionable 10b-5 claim against

Defendants -- including potentially supporting the strong inference of *scienter* required by law --

have now been recanted and disavowed, stripped of any credible evidentiary value.

Plaintiffs do not even *identify* in their motion, let alone satisfy their burden to *prove by

preponderance of evidence*, any actionable statement by Defendants in their Q3 2011 disclosures,

their Q4 2011 disclosures, or at any time, to launch a class period.  Their allegations: (a) have

correctly been rejected by this Court as *not actionable* in its Order dismissing the FAC; (b) are

not supported by any evidence, let alone the preponderance of evidence required to meet

Plaintiffs' burden; and (c) are solely allegations of "fraud by hindsight" which do not state a

---

[4]   In addition, that announcement was both forward-looking and heavily caveated.  Plaintiff New
Bedford's investment advisor testified that the market understood that Genworth was not
guaranteeing that the IPO would occur at a particular time, and noted Genworth's express
caution that the IPO was "subject to market conditions" identifying a host of factors that could
derail the planned timing, such as, *e.g.*, not receiving a favorable valuation.  Ex. K, McHugh Tr.
113:17-115:3; 68:2-24.

claim under black letter law and are belied in large part by clear disclosures of the very facts

Plaintiffs claim Genworth "omitted."

      **1.**      **The Allegations at the Core of Plaintiffs' SAC Have Been Recanted and Disavowed and Do Not Present the "Preponderance of Evidence" Necessary to Certify a Class.**

      Plaintiffs' request to certify a class depends entirely on the same non-"evidence" from the

CWs that they used to pass the threshold hurdle of the PSLRA -- but repackaged as the

presentation of "class wide misrepresentations and omissions" that Plaintiffs claim can be proven,

or disproven, with proof common to the class.  This doesn't cut it.  As described in Defendants'

Motion for Reconsideration briefs filed on January 22, 2016 and February 17, 2016 (Exs. B-E,

Dkt. 87, 88, 89, 102), Plaintiffs' allegations of *scienter* are based entirely upon statements

attributable to two confidential witnesses -- Messrs. Meacham and Mullins -- which have now

been entirely undermined and stripped of any evidentiary value whatsoever.

      As background:  in denying Defendants' Motion to Dismiss the Second Amended

Complaint, this Court had accepted as true the confidential witnesses' statements that (1) AU MI

was experiencing, but did not disclose, a significant increase in delinquencies "throughout" 2011

and (2) Genworth used an internal PowerPoint slide at an "L&M" meeting in December, 2011

reflecting a $100 to $125 million quarterly increase in claims that was not publicly reported in

2011, and that purportedly exceeded AU MI's allotted reserves.  These allegations together led

the Court to conclude that Plaintiffs sufficiently pled that when Genworth announced the partial

IPO on November 3, 2011, it "willfully suppressed" the fact of "mounting claims and losses

calling for a substantial increase in loss reserves." (Ex. G, June 16, 2015 Order, at 2).

      Both of the confidential witnesses have now recanted or disavowed all of the salient

*scienter* allegations attributed to them.  As a consequence, allegations that Genworth misstated

its earnings or reserves (or anything else) in its November 3, 2011 announcements do not stand

up to rigorous analysis as the basis of an actionable misrepresentation or omission.

Defendants' initial and reply Memoranda in support of the Motion for Reconsideration

describe the witnesses' recantations and disavowals in detail.  Exs. C, E, Dkt. 88, 102.

Defendants incorporate those filings fully herein and in those papers walk the Court through a

rigorous analysis of the "proof."  For the Court's convenience, they are summarized here.  Mr.

Meacham testified in his deposition:

- That he may not have seen a presentation at any time in 2011 showing a $100-$125 million increase in claims in Australia, and it's possible that he saw a presentation in 2012, or that he never saw these specific numbers at any time (Ex. D, Meacham Tr. 227:19-229:10; 249:9-252:4);

- That he was "not sure" there even was an "L&M" meeting in December 2011 (Ex. D, Meacham Tr. 185:2-5);

- That he had "no reason to dispute" Genworth's sworn interrogatory response that there was no such meeting in December 2011 (Ex. D, Meacham Tr. 186:15-187:22);

- That he could not recall any Genworth senior executive stating in December 2011 that Australia was having a "poor quarter" or that "claims were exceeding the allotted reserves" (Ex. D, Meacham Tr. 287:9-16; 323:5-324:5);

- That he did not know how financial information concerning AU MI was provided to Mr. Frazier in 2011 or 2012 (Ex. D, Meacham Tr. 280:19-23, 281:17-282:5);

- That there was never a "L&M" meeting at which Genworth discussed financial results that had not already been publicly reported (Ex. D, Meacham Tr. 147:23-148:18); and

- That he had no knowledge or reason to believe that Genworth ever reported false information in its financial statements (Ex. D, Meacham Tr. 232:17-233:3).

Even now after Plaintiffs' counsel have tried to rehabilitate his testimony, Mr. Meacham was

unable to reaffirm under oath the truth of, *i.e.*, completely recanted, the central allegation reciting

an undisclosed quarterly increase in claim payments of $100-$125 million in 2011, which is the

heart of Plaintiffs' assertion of *scienter*.  SAC ¶¶18, 40, 62, 64-65, 92.  Mr. Meacham admitted

in his declaration that he has *no personal knowledge* that would allow him to swear to the existence of the PowerPoint in question, and he can no longer swear that the slide was shown at a December, 2011 L&M meeting.  Ex. J , Dkt. 99-8.  Mr. Meacham's latest declaration does not undo his recantations, but instead confirms that Mr. Meacham had no basis to make the assertions the SAC attributes to him in the first place. The declaration, coupled with Mr. Meacham's deposition testimony, makes clear that Mr. Meacham has no idea what L&M meetings took place, when, or what exactly was shown by way of PowerPoint, or what was said by whom, and when, at any meeting, rendering him worthless as evidentiary support.  The Court need not decide which of Mr. Meacham's many different versions of the facts is true in order to conclude that he *does not provide any facts at all* to support Plaintiffs' burden -- and certainly provides nothing to support a class period starting on November 3, 2011.

Mr. Mullins's sworn declaration and deposition testimony similarly confirm that Plaintiffs attributed information to him that *he has consistently disavowed and refuted*.  Mr. Mullins swore that he did *not* tell Plaintiffs that there were "throughout 2011 [i]nternal reports showing increasing delinquencies in Australia." Ex. D, Mullins Dec. ¶ 10.  Moreover, he further confirmed that he did *not* provide information concerning internal reports that was different from "what you see externally" -- and that as far as he knows, the information being put out externally in public disclosures was accurate.  Ex. I, Mullins Tr. 154:6-155:6.  He further disputes having told Plaintiffs either that there was "certainly evidence" that the economic conditions in Australia were deteriorating prior to the IPO.  Ex. D, Mullins Dec. ¶ 13.  And Mr. Mullins denies revealing or even *having* any firsthand knowledge about what information was provided to Defendant Michael Fraizer, Genworth's CEO, undermining the SAC.  Ex. D, Mullins Dec. ¶ 8.

Plaintiffs cannot establish by a "preponderance of the evidence" that the requirements of Rule 23 have been met when both of their confidential witnesses have recanted and/or disavowed personal knowledge of all of the SAC's CW "factual" allegations of *scienter*.  This was Plaintiffs' only "evidence" of critical elements of their 10b-5 claim (misrepresentation and *scienter*) claiming that there were internal, undisclosed financial results which contradicted Genworth's publicly released 3Q (and 4Q) 2011 quarterly financial results.  Far from a "preponderance," there is no evidentiary showing at all to support the launch of a class period.

Moreover, even if this Court were to credit Mr. Meacham's allegations, this could not support a November 3, 2011 start date for class because he references only a *December* 2011 PowerPoint.  And even what Mr. Mullins has been alleged to say attaches to no date at all.  There is simply nothing to support that November 3 start date.

In most cases, "rigorous analysis" of a motion to certify a class, and the Court's close examination of merits issues, is tuned to the issue of whether the elements of a claim can be established with class wide proof, or rather if individualized issues "predominate."  But rigorous analysis is *no less the law* when the Rule 23 requirement at issue is the class period.  Defendants do *not* maintain that Plaintiffs must set forth sufficient evidence to establish liability at this stage in order for this Court to certify a class.  But the Court's obligation to conduct a "rigorous analysis" -- and reach findings of fact -- would be utterly meaningless if Plaintiffs are permitted to commence a class period and satisfy their burden based on nothing more than unreliable and unsupported allegations that have now been recanted, disavowed and contradicted by sworn testimony.  As Plaintiffs concede, the question at the class certification stage is whether Plaintiffs' *evidence* is sufficient to warrant certification.  Pl. Br. 4-5, *citing In Re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d 124 (2d Cir. 2001).

2.      **Plaintiffs Cannot Trigger a Class Period by Reference to SAC Allegations Already Rejected by This Court as Insufficient to Even State a Claim.**

Plaintiffs reference a string of additional SAC allegations as purported "factual background" for their class motion.  Allegations are not an evidentiary showing.  This Court already recognized the insufficiency of these very same allegations to even state a claim under Rule 10b-5 when the Court dismissed the First Amended Complaint.  Ex. F, Dkt. 41.  Particularly since the assertions that had been attributed to the CWs have been stripped away, Plaintiffs fail to support with *any* evidence a single actionable statement made with *scienter* from which a class period can be launched.  They thus fail this core Rule 23 burden.

Courts in these exact same circumstances -- *i.e.,* faced with a proposed class period for which there is no evidentiary support of falsehood or *scienter* -- have refused to certify the class requested.  For example, the district court in *Lumen v. Anderson* grappled with insufficient allegations on a motion to certify a class and explained:

> Plaintiffs insist the length of the class period is a merits question, but (1) **before it can be a merits question it must be properly pled**, (2) the **class period cannot begin before an actionable statement or concealment occurs**, and (3) **I must make a preliminary inquiry to ascertain the class period** to determine whether a class can even be certified.

280 F.R.D. at 456 (emphasis added).  The court walked carefully through the facts and the high bar set by the PSLRA, emphasizing in particular the requirement that the Court determine "'whether all of the facts, taken collectively, give rise to an inference of *scienter*' that is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'"  *Id.*  The court concluded that "no inference of *scienter* has been created with respect to statements made before [the date at issue], so the class period cannot commence before then."  *Id.*[5]

---

[5] The *Lumen* court narrowed the class in other material respects and ultimately certified a class period of just under four months. *Id.* at 456-57, 462.

Likewise in *In re Veeco*, 235 F.R.D. at 241, Judge McMahon refused to accept plaintiffs' class definition because it was based on allegations that were protected and *not actionable*. After analyzing in detail the specific facts related to the alleged statements by defendants on a class motion, the Court concluded that certain statements were *not actionable* because they "were accompanied by meaningful cautionary statements, such that they are protected by the bespeaks caution doctrine and the first prong of the PSLRA's safe harbor provision." *Id.* at 235. The Court thus rejected plaintiffs' class definition, and shortened the class period to only that period for which plaintiffs could show (or defendants conceded) actionable statements. *Id.* at 241.

The Court should do the same here and reject Plaintiffs' motion altogether. These decidedly are not questions to be reserved for the "merits," nor can Plaintiffs hide behind the platitude that they are "common" to Genworth investors: Plaintiffs have not supported their motion with any evidence of an ***actionable misrepresentation or omission***, let alone the preponderance of the evidence required to establish this most basic Rule 23 class requirement -- the class period.

> **3.     Plaintiffs' "Fraud-by-Hindsight" Allegations Do Not Identify an Actionable Statement to Launch a Class Period, or Provide Evidentiary Support to Meet Plaintiffs' Rule 23 Burden.**

Plaintiffs' class motion attempts to mask the reality that they do not even identify any specific statement that they allege is false and made with *scienter* and can trigger a class period by referring generally to allegations of "misrepresentations and omissions about the strength of Genworth's Australian mortgage insurance ('MI') subsidiary and the Australian housing market," that supposedly did not inform investors of the unit's "massive exposure to low-documentation loans," a "worsening delinquency trend," and "massive losses Genworth was experiencing and the increased reserves required" to account for those losses. Pl. Br. at 2-3.

But Plaintiffs never even plead -- let alone submit on this motion -- a single piece of evidence or specific attribution of knowledge to any of the Defendants that support these bare conclusory assertions.  They cannot rely on the recanted and disavowed statements of the CWs. And the only other "facts" that Plaintiffs' SAC even references as purported proof of what Defendants "must have known" in 2011 came from Genworth's **April 17, 2012** announcement that the IPO would be delayed and that the Australian MI unit had suffered losses during the first quarter of 2012, which supposedly "proves" Defendants' prior statements in 3Q 2011 and 4Q 2011 disclosures to be misleading.  But this "fraud by hindsight" claim does not even assert there was any contrary knowledge on a particular prior date, and it provides no basis at all to trigger the beginning of a class period.

Second Circuit law is clear that Plaintiffs may not maintain a fraud claim -- and therefore may not initiate a class period -- by merely "seiz[ing] upon disclosures made in later . . . reports and alleg[ing] that they should have been made in earlier ones."  *Denny v. Barber*, 576 F.2d 465, 470 (2d Cir. 1978); *see also In re Fannie Mae 2008 Sec. Litig.*, 525 F. App'x 16, 19 (2d Cir. 2013).  "[I]t is well-settled that 'fraud by hindsight' is not a cognizable theory of relief; 'fraud is always obvious in retrospect, but it is not reckless to lack clairvoyance.'"  *In re PetroChina Co. Ltd. Sec. Litig.*, No. 13-CV-6180 ER, 2015 WL 4619797, at *16 (S.D.N.Y. Aug. 3, 2015) (*quoting In re Longtop Fin. Techs. Ltd. Sec. Litig.*, 910 F. Supp. 2d 561, 579 (S.D.N.Y. 2012)).

As this Court already recognized when it *sua sponte* dismissed the FAC -- which was identical in all material respects to the SAC, save for the attributions to the CWs -- courts universally reject such Monday morning quarterbacking.  "Mere allegations that statements in one report should have been made in earlier reports do not make out a claim of securities fraud." *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 53 (2d Cir. 1995); *see also In re Magnum Hunter Res.*

*Corp. Sec. Litig.*, 26 F. Supp. 3d 278, 290 (S.D.N.Y. 2014) ("without contemporaneous falsity,

there can be no fraud.") *aff'd*, 616 F. App'x 442 (2d Cir. 2015).  Far from supporting a "clear and

cogent" case of *scienter* at some undefined point back in 2011, the April, 2012 statements are

instead far more likely to be consistent with the inference that Genworth experienced unexpected

losses *in the first quarter of 2012* that caused the Company to delay the planned IPO.

Furthermore, Plaintiffs lack even any allegation (aside from the disavowed and recanted

CW testimony) -- let alone any evidence -- suggesting that either Genworth's reserves did not

fairly align with Genworth's available information at the time they were disclosed for 3Q 2011

or 4Q 2011, or that the reserves otherwise were intentionally misstated.  Their hindsight,

conclusory allegations clearly do not provide any *evidence*, let alone a preponderance, of a

known false statement to start a class period.  *See In re Magnum Hunter Res. Corp. Sec. Litig.*,

26 F. Supp. 3d at 290 ("without contemporaneous falsity, there can be no fraud").

**4.      Plaintiffs' Proposed Expert Report on "Price Impact" and an "Efficient Market" Does Not Assist Them At All in Satisfying Their Burden To Commence a Class Period.**

Plaintiffs devote the majority of their memorandum to the argument that Genworth

common stock traded in an "efficient market," and submit the report of a proposed expert, Dr.

Steven Feinstein, purportedly to show both market efficiency and "price impact."  Defendants do

not dispute that Genworth common stock traded in an efficient market.[6]  Rather, Defendants take

issue with Dr. Feinstein's starting point, which is the proposal to commence a class period on

November 3, 2011, in the absence of any evidentiary showing of an actionable misrepresentation

or omission.  The fact that there is a "price impact" from either an IPO announcement, or a

---

[6]  However, Defendants do vigorously dispute many other aspects of Dr. Feinstein's analysis, the
methods and conclusions of his event study, as well as his damages calculations and theories,
and if required, intend to confront all of these issues at the appropriate juncture in this case, if
and when it proceeds.

Genworth earnings report, *means nothing* for purposes of certifying a 10b-5 class, given

Plaintiffs' threshold failure to show that any false statement *artificially* inflated the market price.

## II.    PLAINTIFFS' TRADING PATTERNS SUBJECT THEM TO UNIQUE DEFENSES.

Plaintiffs seek to certify a class in the 10b-5 case by invoking a presumption of reliance

on either a misrepresentation or omission that prompted a purchase by them at a particular

market price.  But Plaintiffs' trading patterns indicate that Defendants' alleged fraudulent

conduct had no effect on their purchase activity or assessment of Genworth's management or

value, raising unique defenses regarding Plaintiffs' actual reliance.  The Second Circuit has made

clear that class certification is inappropriate where a putative class representative is subject to

unique defenses:  "Regardless of whether the issue is framed in terms of the typicality of the

representative's claims . . . or the adequacy of its representation . . . there is a danger that absent

class members will suffer if their representative is preoccupied with defenses unique to it."  *Gary*

*Plastic Packaging Corp. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d

Cir. 1990) (citations removed).  The Court need not find that the defense would ultimately

prevail to conclude that Plaintiffs have not met the typicality and adequacy prongs of Rule 23.

*See Kline v. Wolf*, 702 F.2d 400, 403 (2d Cir. 1983).  "The fact that plaintiffs will be subject to

such defenses renders their claims atypical."  *Landry v. Price Waterhouse Chartered*

*Accountants*, 123 F.R.D. 474, 476 (S.D.N.Y. 1989).

Courts have refused to certify classes in cases where the plaintiff purchased the stock

after "revelation" of the supposed fraud.  *See, e.g.*, *George v. China Auto. Sys., Inc.*, No. 11 CIV.

7533 KBF, 2013 WL 3357170, at *6 (S.D.N.Y. July 3, 2013) ("post-disclosure purchases can

both defeat typicality and adequacy as well as rebut the presumption that plaintiff relied on the

alleged misrepresentations or the integrity of the market in making his or her purchases");

*Berwecky v. Bear, Stearns & Co.*, 197 F.R.D. 65, 69 (S.D.N.Y. 2000) ("[A] person that increases his holdings in a security after revelation of an alleged fraud involving that security is subject to a unique defense that precludes him from serving as a class representative."); *Rocco v. Nam Tai Electronics, Inc.,* 245 F.R.D. 131, 136 (S.D.N.Y. 2007) (same).

These rulings are firmly rooted in Supreme Court law, which recognizes that:

if a defendant could show that the alleged misrepresentation did not, for whatever reason, actually affect the market price, *or that a plaintiff would have bought or sold the stock even had he been aware that the stock's price was tainted by fraud*, then the presumption of reliance would not apply.

*Halliburton II*, 134 S. Ct. at 2408 (emphasis added) (citations omitted), *citing Basic,* 485 U.S. at 248-249. Here, Plaintiffs' "post-fraud" purchases, and their failure to instruct their investment managers not to purchase Genworth stock, indicate "that the alleged misstatements or omissions were not really a factor in the purchasing decision." *George*, 2013 WL 3357170, at *6.

As reflected in the chart below, neither Plaintiff purchased Genworth stock for the first three months of the proposed class period, until February 2012; both continued to purchase after the revelation of the supposed fraud on April 17, 2012; and both *continued to purchase* substantial amounts of Genworth stock even *after* the filing of their securities fraud Complaint:

| November 3, 2011 | Genworth announces 3Q 2011 earnings and IPO of AU MI, purported start of class period |
|---|---|
| November, 2011 | No purchases by Hialeah or New Bedford |
| December, 2011 | No purchases by Hialeah or New Bedford |
| January, 2012 | No purchases by Hialeah or New Bedford |
| February 2, 2012 | Genworth announces 4Q 2011 results |
| Feb 1-Feb 16, 2012 | No purchases by Hialeah or New Bedford |
| Feb 17-21, 2012 | New Bedford purchases 18,650 shares |
| February 22, 2012 | Hialeah purchases 11,100 shares |

| | |
|---|---|
| Feb 23-Mar 20, 2012 | No purchases by Hialeah or New Bedford |
| March 21, 2012 | Hialeah purchases 10,700 shares |
| Mar 22- Apr 17, 2012 | No purchases by Hialeah or New Bedford |
| **April 17, 2012** | **Genworth announces delay of AU MI IPO, purported end of class period** |
| April 23, 2012 | Hialeah purchases 1,850 shares |
| August 9, 2012 | Hialeah purchases 800 shares |
| August 16-21, 2012 | New Bedford purchases 16,150 shares |
| June 26, 2013 | Hialeah purchases 28,400 shares |
| September 24, 2013 | Hialeah purchases 300 shares |
| October 7, 2013 | New Bedford purchases 4,600 shares |
| **April 4, 2014** | **This Lawsuit is filed** |
| April 22-29, 2014 | New Bedford purchases 11,040 shares |
| July 11, 2014 | New Bedford purchases 2,760 shares |
| July 17, 2014 | Hialeah purchases 200 shares |
| July 18-22, 2014 | New Bedford purchases 3,330 shares |
| **July 25, 2014** | **Hialeah and New Bedford appointed as Lead Plaintiffs** |
| July 30, 2014 | New Bedford purchases 1,640 shares |
| August 27, 2014 | Hialeah purchases 200 shares |
| November 13, 2014 | Hialeah purchases 1,050 shares |
| February 17, 2015 | Hialeah purchases 400 shares |
| March 6, 2015 | Hialeah purchases 350 shares |
| August 27, 2015 | Hialeah purchases 1,200 shares |
| December 2, 2015 | Hialeah purchases 14,500 shares |

This trading history[7] reflects that both Plaintiffs (1) bought no Genworth shares directly following either the 3Q 2011 earnings release or IPO announcement, (2) bought no shares directly following the 4Q 2011 earnings release, and (3) continued to invest in a company they were simultaneously accusing of fraud.  These substantial purchases reveal Plaintiffs to be highly atypical.  Plaintiffs' own actions demonstrate that, notwithstanding assertions of intentional wrongdoing, they are not truly concerned by Defendants' supposed actions at all.  The purchases render Plaintiffs atypical and inadequate, as presumably most investors do not purchase shares in companies that they believe to be committing fraud.  The presence of unique defenses also calls into question "predominance" under Rule 23(b)(3), since the question of reliance must be

---

[7]  Plaintiffs both purchased and sold stock during this period, as reflected at Ex. P.

individually analyzed for both Plaintiffs.  *See generally George*, 2013 WL 3357170, at *1 ("The

Court finds that the presence of unique defenses defeats adequacy, typicality, and

predominance").

### III.   PLAINTIFFS' PROPOSED CLASS DEFINITION IS IMPROPERLY OVERBROAD AND TECHNICALLY DEFICIENT BECAUSE PLAINTIFFS INAPPROPRIATELY INCLUDE ALL OPTIONS PURCHASERS IN THE CLASS DEFINITION, AND START THE PROPOSED CLASS ONE DAY EARLY

In addition to the fundamental infirmities with Plaintiffs' proposed class period that

preclude certification altogether, the class definition is technically deficient.  Plaintiffs include

securities purchasers for whom they lack standing, including purchasers of Genworth options.

They also inappropriately propose a start date the day before trading could begin in response to

the very announcement they claim to be "actionable."

Plaintiffs ask the Court to certify a class of:

[A]ll purchasers of publicly traded Genworth securities between November 3, 2011 and April 17, 2012 inclusive and who were damaged when the truth about Genworth's Australian MI unit was disclosed.

Pl. Br. 1.  First, the class definition should be limited to GNW common stock, the only securities

that any Plaintiff purchased. [8]  Plaintiffs fail to demonstrate grounds for including the broad

category of stock option purchasers within the proposed class.  First, no Plaintiff itself has

standing to represent options purchasers.  Neither Plaintiff purchased any Genworth stock

options during the proposed Class Period, and in fact Plaintiffs' own investment policies that

govern their pension funds actually prohibit options purchases.  Ex. K, Arnaudet Tr. 38:5-8; Ex.

L, McHugh Tr. 31:9-18; Ex. M, Williams Tr. 33:9-15;  Ex. N; Ex. O.

---

[8]  Although their class definition is unacceptably imprecise, Plaintiffs' interrogatory responses and a footnote in their brief suggest that Plaintiffs do intend to limit the class to Genworth common stock trades on the NYSE (U.S. Exchange).  However, they seek to include purchasers of stock options in the proposed class.  Pl. Br. 21, n. 12; Ex. A, Plaintiffs' Objections and Responses to Defendants' First Set of Interrogatories, Response 1, p. 9.  Plaintiffs have made clear that "in and out" traders are excluded from the class.  Ex. H, 9/30/15 Tr. at 12:6-13:2.

At their depositions the representatives of New Bedford and Hialeah both made clear that they were not making any claims in this case on their own behalf based upon the purchase of Genworth options.  Ex. K, Arnaudet Tr. 39:20-23; Ex. M, Williams Tr. 37:11-13.  The Second Circuit has held that at least one named plaintiff must have standing to sue on every type of security at issue in a 10b-5 case.  *See Hevesi v. Citigroup Inc.,* 366 F.3d 70, 82 (2d Cir. 2004); *see also New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*, No. 08 Civ 5653 (PAC), 2010 WL 1473288 (S.D.N.Y. Mar. 29, 2010); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 175 (S.D.N.Y. 2009) ("[although] plaintiffs . . . may be deemed adequate class representatives for claims based on securities they did not purchase, one of the named plaintiffs must have purchased those securities.")

Second, all "options," regardless of their nature, and irrespective of strike price and expiration date, cannot be "lumped" together and included in a class on the *assumption* -- absent any evidence or proof submitted by Plaintiffs -- that owners' interests are aligned.  *See In re Bank of America Corp. Sec., Derivative, and ERISA Litig.*, No. 09 MD 2058, 2011 WL 3211472, at *13 (S.D.N.Y. Jul. 29, 2011) (options are not only securities distinct from common stock, but options with different expiration dates are also distinct securities from each other).  Most glaringly, "put options" cannot plausibly be included in a class, since the value of a put option moves in the *opposite* direction as the value of the underlying stock, *i.e.*, the right to sell a stock at a given price becomes more valuable as the stock price decreases.[9]

---

[9]  Here, the proposed class consists only of purchasers of "publicly traded Genworth securities," and only such purchasers who were damaged "when the truth about Genworth's Australian MI unit was disclosed," meaning when GNW stock price dropped 24%.  Pl. Br. 3, *citing* SAC ¶¶ 17, 21-24, 109-114.  Clearly that definition includes no sellers of any security, and could not include purchasers of put options, because they suffered no damages -- if an investor purchased a put option during the time that Plaintiffs claim the value of GNW stock was artificially inflated, they benefitted from the decline in GNW stock price on April 17, 2012.  This is anything but an

Finally, a November 3, 2011 start date is inappropriate because Genworth's allegedly misleading announcements did not occur until *after* trading had closed for that day, and therefore could not have affected the stock price until November 4, 2011.  Plaintiffs' proposed expert concedes, "[o]n 3 November 2011, ***after the close of trading***, Genworth reported financial results for Q3 2011" and "announced its plan" for the partial minority IPO of the AU MI business.  Feinstein Dec., Dkt. 94 at ¶¶ 105-106.  Genworth released the news at 4:25 PM on November 3, 2011, too late to affect trading on that day.  Thus, anyone who traded GNW stock on November 3, 2011 did so without knowledge of the alleged November 3 statements and their trading could not have been affected thereby.

## IV.    PLAINTIFFS' DRAFT PROPOSED ORDER FAILS TO MEET THE COURT'S OBLIGATION TO CONDUCT A RIGOROUS ANALYSIS OF WHETHER PLAINTIFFS HAVE MET THEIR RULE 23 BURDEN BY PREPONDERANCE OF EVIDENCE, AND TO RENDER FACTUAL FINDINGS ON ALL ASPECTS OF THE CLASS, INCLUDING ITS START DATE

Even were this Court to agree with Plaintiffs, the Court may not enter Plaintiffs' conclusory Proposed Order (Dkt. 91-1), which contains none of the factual findings that this Court is required to make pursuant to Rule 23, as well as Supreme Court and Second Circuit law. The Second Circuit requires that an order certifying a class "must provide sufficient ***factual findings*** on Rule 23 requirements as they pertain to the claims asserted against each defendant to demonstrate ***compliance with the law*** in deciding to certify."  *St. Stephen's School v. PricewaterhouseCoopers Accountants N.V.*, 570 F. App'x 37, 39 (2d Cir. 2014) (emphasis added).  As noted above, "compliance with the law" requires that this Court undertake a "rigorous analysis" of Plaintiffs' arguments to "assess all of the relevant evidence admitted at the class certification stage and determine whether each Rule 23 requirement has been met."  *In re*

---

alignment of interests.  *See NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012).

*IPO*, 471 F.3d at 42; *see generally Halliburton II*, 134 S. Ct. at 2412.  This Court must undertake its own analysis and make factual findings as to whether Plaintiffs have met their burden to satisfy all aspects of Rule 23, including the class definition, by a *preponderance of the evidence*, based on the *evidentiary proof submitted* (or lack thereof) -- and not accept Plaintiffs' submission of only a single page of substantive text containing four numbered paragraphs granting Plaintiffs' motion and defining the class.  Such an order would not pass muster.

## CONCLUSION

A class decision is quite serious for the parties, and cannot be made on a "wait and see" basis without any evidence and absent sufficient grounds for factual findings by the Court concerning any actionable statement that can trigger the start of a class period.  Courts have long recognized that "class certification . . . place[s] hydraulic pressure on defendants to settle . . .", *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 192 (3d Cir. 2001), and that "*in terrorem* settlements result[ ] from the expense and difficulty of, even meritoriously, defending this kind of litigation."  *Regents of University of California v. Credit Suisse First Boston (USA), Inc.*, 482 F.3d 372, 392 (5th Cir. 2007) (citation omitted) *cert. denied*, 552 U.S. 1170 (2008); *see also Hevesi v. Citigroup Inc.*, 366 F.3d 70 (2d Cir. 2004).  The Plaintiffs' proposed class does not pass the hurdle and should not be certified.  The fact that they chose to make this motion early in the case and prior to significant discovery should not be to Defendants' detriment.

- 23 -

For the foregoing reasons, Defendants Genworth Financial, Inc., Michael D. Frazier and

Martin P. Klein respectfully request that this Court deny Plaintiffs' Motion for Class

Certification.

Dated:  February 22, 2016                    DENTONS US LLP
        New York, New York

                                             By: /s/ Sandra D. Hauser
                                             Reid L. Ashinoff
                                             Sandra D. Hauser
                                             Brendan E. Zahner
                                             1221 Avenue of the Americas
                                             New York, New York 10020
                                             (212) 768-6700

                                             David I. Ackerman (admitted pro hac vice)
                                             1301 K. Street NW, Suite 600
                                             Washington, DC 20005
                                             (202) 408-6400

                                             Attorneys for Defendants Genworth Financial,
                                             Inc., Michael D. Fraizer and Martin P. Klein